May it please the Court, Vivian Fu for Petitioner Appellant Arturo Garcia. There are two issues on appeal here. The voluntariness of the confession and the prosecution's withholding of material impeachment evidence on Officer McNeill. This is an EDPA case, so the standard of review is whether the state court decision was an unreasonable determination of the facts or contrary to or an unreasonable application of clearly established law. So I'd like to start with the Grady issue. Officer Why would it have mattered? The Why wasn't, let's suppose that they should have disclosed, this was another of those Rampart Yes, this was Rafael Perez McNeill, yeah. Well, let's suppose they should have disclosed everything about the investigation. How would it have mattered to this case? Well, it would have placed Mr. Garcia's contention that his confession was involuntary and Officer Wiginton's denial is in such a different light that confidence in the verdict is undermined. I mean, defendants all the time contest that their confession was involuntary, but it's not very common that the lead interrogator has been implicated in multiple instances of police misconduct. And Officer Wiginton was also a crash officer like McNeill and like It strikes me as just the flip side of a guy who has a really bad rap sheet can still be either innocent of the crime he was charged with or in the case where the policeman is dirty, it might not have mattered. That's true, Your Honor. You could have a policeman who plants a gun on every suspect who doesn't have one, but if the suspect really had a gun, it doesn't matter that the policeman is so inclined. The Supreme Court also held in Bagley that a reviewing court has to take into account whether or not a specific grading request was made and whether the defense made a strategic decision in reliance on the prosecution's response. And in this case, a specific grading request was made, and the prosecution represented to the trial court that there was no braiding material. Hey, can you tell me how the information would have come in? Now, McNeill didn't testify. He didn't testify. The state court said only Wiginton and I guess Quintero testified. That's correct. And so how would the impeachment against Officer McNeill have come in? Well, that's one of the reasons I think the defense could have changed its strategy, because it could have subpoenaed McNeill, it could have called McNeill as its own witness and then impeached him in that manner, and that's how it could have come in. I think that the trial, the defense counsel proceeded in a certain way in reliance on the fact that there was no braiding material, and I think that affects the analysis of how it's not really how the trial could have been different if this material had been disclosed. I don't understand why you'd suppress the confession, incidentally, because it looks like this fellow confessed before anyone even asked him any questions. The police didn't even mean to bust him on a murder. What they meant to bust him on was domestic violence, because his wife or girlfriend or sister or somebody called him, girlfriend I guess it was, and then there he is babbling about his murder. That's actually one of the reasons that I think that the State court decision is unreasonable on the voluntariness of the confession, because it doesn't make sense that the murder occurred two months before he was picked up on domestic violence, and it totally doesn't make sense that they put him in a room, they don't even say the victim is so-and-so who confessed before he got to the room. What do you mean it doesn't make any sense? I'm sorry? Why does that make any sense? Well, how would he even know that they wanted to talk to him about this person's murder? Because the murder occurred two months ago. They didn't. Sorry? They didn't. They didn't. He volunteered it. All they wanted to talk to him about was beating his wife or girlfriend. If you're looking for people who make sense, don't look in the criminal justice system. I spent 23 years watching stuff that boggled my mind that people did. I don't understand what you mean it doesn't make any sense. You and I probably wouldn't do it if we committed a murder and the police walked in, we'd start saying, gee, I did it, and, you know, I'm glad you're finally here. I don't know. I think if I'd murdered somebody two months ago, it might still be on my mind. Getting back to Quintero's testimony, so Quintero, I guess, was the one who testified that we went, we picked up Garcia, and he babbled all this stuff about the murder he committed or that he was the driver in that murder. And so one of the state court's thoughts or findings was that, well, all of this evidence was already there, so whatever happened to the second confession was not going to affect the outcome of the trial. That's correct. And so there the Brady material would not have been material. Why isn't that, why is that an unreasonable determination? Well, first of all, I think he was relying on the fact that Leadington was the arresting officer and that he was the one that heard these statements. And second of all, Bagley says that the materiality test under Brady is not a sufficiency of evidence test, and that's essentially what the state court's saying. It's saying if there was enough evidence even without this, the suppressed material, to convict Mr. Garcia, and that's not the test. It's not, he doesn't have to show that he would have been acquitted but for the suppressed evidence. It's, the test is whether it's the trial that he could have had, not the trial that he could have had. We have his statements to Quintero, and then his statements in the second confession, which he would try to impeach by saying one of the officers involved, but not Wiginton, who was testifying, but McNeil, one of the officers had been implicated in the Rampart scandal. So that, we'd have to say that that impeachment against the second officer, McNeil, was material, the fact that you didn't have the evidence for that. Right. That's our argument, that the impeachment evidence against McNeil is material because it would have affected. And what's your definition of material? We have to conclude that it would have affected the outcome. Right. Or put the case in such a different light. Put the voluntariness of the confession in such a different light. Yeah. Not just change the trial, but have some kind of a. Have some kind of reasonable. And again, here, it just doesn't seem that that would have been the case, given the totality of the evidence that was in the record from other people than McNeil. I think also that the state court, there's a lot of factors that the state court, I think, did not take into account in its decision. And one of the things is that Mr. Garcia had been arrested before. You know, he had been advised by his counsel, his current counsel of defense, who had represented him prior, never to talk to police. So he had no reason, I mean, he had no reason to talk to police. A lot of them are stupid. I used to get them all the time. They do that all the time. They confess to the police. I got appointed. They came to me, and they told me some exonerating lie. Happens all the time. You're right. In the logical world, it doesn't happen. He also called his sister immediately after the interview and asked to call his lawyer. There's several statements on the tape that, on the tape. Look, let's say, let's hypothesize that if all the stuff about Rampart had been turned over, defense counsel could have blown McNeil out of the water, showed that not a word he says should be believed by the jury. All right? I'm trying to figure out what unsuccessfully impeached lies McNeil could have told that would have mattered to the outcome, considering what the guy said when he was being taken out of the apartment. Well, what he said when he was being taken out of the apartment, all he said was, me and my homies were involved in a drive-by, and it wasn't even my gun. I mean, he didn't say. Yeah, that's pretty good. He said, me and my homies did a drive-by, and he's locked up, and I know he rolled on me. I got a warrant for murder. Fuck, the gun's not mine. One of my homies let me borrow it for protection because I got a green light from the Mexican mafia. And it goes on. But our position is that those statements on their own, if you take out the confession, those statements wouldn't have been enough to get him convicted. No. And the trial court even said that. The trial court said, you know, if he hadn't talked to the police. Me and my homies did a drive-by? That sounds to me like a full confession. Well, he doesn't name any names. He doesn't. I mean, given what the trial court. Me is a name. I'm sorry? Me is a name, and that's the name that matters. Well, the trial court did say on the record that it would have been different for him if, things would have been different for him if he hadn't confessed. And his co-defendant, Mr. Morales, who was the acknowledged shooter, was acquitted because the trial court didn't believe any of the prosecution gang witness testimony. And I think that's. . . That's true. But here we're talking about McNeil and how he might relate to all of this kind of stuff. That's why it doesn't look like it would have made any difference at all. Well, I guess our position is different because we do believe that had this information been disclosed, that this was a court trial as well. I mean, I think it could only have impacted how the judge looked at Mr. Garcia's testimony and Officer Wiggins' testimony, and I believe that it would have changed the defense's strategy. I'm looking at this court of appeals decision, and the court says, for the record, we note that in light of Garcia's volunteered statements at the apartment, the confession was icing on the cake. Without it, the result would have been the same, suggesting that the state court did think that his statements at the apartment were sufficient. Right. The state appellate court did, but we argue that that's unreasonable in light of what the state trial court said, that he pretty much, that that was the difference. And the district court as well in its decision. Because we're looking through to the state, the last recent state court opinion, which is this state appellate, and we have to say that's an unreasonable determination in light of the facts. In light of the record, I think that the state trial court stated that it would have, that it would have turned out differently for him if he hadn't confessed. I will reserve some time for rebuttal. Thank you, counsel. Actually, your time's exhausted. Good morning. I'm Deputy Attorney General Jaime Fuster for Respondent. This case really comes down to whether it was reasonable or, let's say, unreasonable for the state courts to adopt Officer Wiginton's testimony over the Petitioner's testimony as to the confession. And I think in light of the evidence presented in the state proceedings, it was definitely more than reasonable for the state courts to find that Officer Wiginton was a credible witness and to adopt his testimony, which there is no dispute that based on Officer Wiginton's version of events, Petitioner's confession was voluntary. You know, there are many reasons why the state court's finding was reasonable. First, there was nothing inherently incredible about Officer Wiginton's testimony. Second, as the court already mentioned, the Petitioner's statement was such that even at the time he was arrested, he was already, you know, willing to talk about what he could, you know, the murder in this case. I mean, you know, without any prompt whatsoever from the arresting officer and thus independent evidence from any testimony provided by Officer Wiginton. Well, why wasn't the impeachment information about McNeil provided to the defense counsel? It certainly was relevant information. I mean, he was one of the two officers who were present in conducting that second interview. I think the record is completely silent as to why that was never provided. I think the record only shows that I think during the state appellate process, defense counsel requested information about maybe, I don't know, if he was both officers or about all the officers or about maybe just Officer McNeil, and that information was provided by the district attorney's office. But as far as why the evidence was not provided at the time of trial, you know, the record is silent. I just don't really want to speculate about it. One of the really nice things for a criminal defendant is if the prosecution commits Brady error. Well, it is really a big issue for the, you know, both in the state appeal and in the federal habeas proceedings. I mean, it is always one of those catchy kind of claims that petitioners like to present, and I think in this case maybe there was a mistake by the district attorney's office. I don't really know. But the one thing I would like to point out is that at the time of trial, all there was in this case were some allegations made by Officer Perez about McNeil in some cases that happened back in the day. I think McNeil was in the room with the defendant alone for part of the time, and McDonough was it? The other policeman wasn't in the room at the time, and that's when the defendant says that McNeil scared him into confessing by threatening his girlfriend and child. No, I don't think the record shows otherwise. I think what the record shows here is that according to petitioner's own testimony in the trial court, was that any threats, alleged threats, or promises made by the officers were made when both of them were always together, and those alleged threats and promises were made before the confession, the day confession started. They were supposed to be made in a different interview. Incidentally, does the logic of the case require us to reach what happened at the police station, or is it all just icing on the cake, and is the result compelled because of what happened when he was being taken from the apartment into the car? Well, I agree with the court that in this case we have two confessions, one that was made before any alleged improprieties by the officers, before any alleged threats or promises made by the interviewing officers, let's call them. Those statements were made at the time by two of the arresting officers, and I think there were actually two officers that testified, Officer Quintero and Officer Rodriguez testified at trial after the statements made by the petitioner at the time of the arrest. So do we even have to reach what happened at the interrogation at the police station? I believe that to the extent the court will find that any alleged error in this case, whether it's the confession claim or the Brady claim was lacking in merit, or let's say lacking in prejudice, then there will be no need for this court to decide the merits of the claim as long as the result will be confirmed in judgment of the district court. Could the defense have called McNeil to the stand and impeached him? Would that be permissible under the Federal rules? I believe that, well, first of all, the evidence, the allegations of misconduct against McNeil were not admissible at trial unless somehow the defense called him to the witness stand. Second, there would be an issue here as to whether the evidence would even be admissible under California Evidence Code Section 352 because it involves allegations at that point in time, only allegations made by Officer Burris after some unrelated cases that happened in 1996 when Officer McNeil was working in Rampart Division, which is not, and I think it's pertinent at this point to point out that Officer Williams, there is no evidence whatsoever that Officer Williams knew anything about those allegations. There is no evidence. This was the first case that Officer Williams and Officer McNeil worked together. So all that, all this shows, and also, you know, the misconduct concern unrelated cases back three years before this case. And I think when the court looks at all that evidence, it will show that it would be really, under Evidence Code Section 352, pretty much prejudicial or confusing to the jury to present this type of evidence. So there could have been, you know, serious doubt at the time of trial that this evidence would even come in just because all the defendant would be doing in this case would be presenting Officer McNeil's just impeachment because Officer McNeil, if we look at what he testified in the preliminary hearing, he would have denied making any threats or promises. So the whole purpose of presenting McNeil at trial would be just impeachment. And as I argued already in my brief, whatever allegations there were of misconduct against McNeil, they do nothing to impeach the credibility of Officer Williams on a trial. There is no evidence whatsoever that he knew anything or somehow approved of Officer McNeil's misconduct in prior cases. And I think for the same reason why the allegations of misconduct as to Officer McNeil do nothing to impeach Officer Williams' testimony with respect to the confession issue, for the same reason those allegations are not material within the meaning of Brady. And that's why both of his claims should be rejected by this Court. And unless this Court has any other questions, I will just submit. Thank you, counsel. Thank you. Unless my colleagues have additional questions for Appellant. Garcia v. Yarbrough is submitted. We'll hear United States v. Robles.
judges: Trott, Kleinfeld, Ikuta